UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERICA HALL,

                Plaintiff,                Case No. 15-cv-14220

v                                              Honorable Thomas L. Ludington

PACIFIC SUNWEAR STORES
CORPORATION d/b/a PAC SUN,

                Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE**

This action was initiated by Plaintiff Hall on December 2, 2015. ECF No. 1. Hall alleges that her former employer, Defendant Pacific Sunwear Corporation ("Pac Sun"), terminated her employment in violation of express and implied agreements, and that she reasonably and detrimentally relied on Pac Sun's promises to protect her against retaliation. *Id*. Hall alleges that as a result, she has suffered and will continue to suffer severe economic damages. *Id*. She therefore seeks an amount in excess of $75,000 in addition to costs, interest, and attorney fees. *Id*.

Defendant Pac Sun has moved to dismiss Hall's complaint, arguing that her claims are covered by a binding arbitration agreement. *See* Mot. to Dismiss, ECF No. 12. Because a binding arbitration agreement covers Hall's claims, Defendant's motion will be granted and Hall's complaint dismissed without prejudice to her ability to pursue her claims through arbitration.

**I.**

Plaintiff Erica Hall is a resident of Saginaw County, Michigan. Compl. ¶ 1, ECF No. 1. Defendant Pac Sun is a foreign corporation authorized to conduct business in the state of Michigan. *Id*. at ¶ 2. According to Plaintiff Hall's complaint, she began working for Pac Sun as the District Manager for Eastern Michigan on or around October 7, 2009. *Id*. at ¶ 12. Hall was later promoted to the position of Regional Director for the Northeast. *Id* at ¶ 13. In June 2013, Hall was transitioned to the position of Regional Branch Manager for the Central Region, and in June 2014 she was promoted to the position of Regional Director for outlets. *Id*. at ¶¶ 14-15. Finally, in March 2015, Hall claims that Pac Sun realigned her position to that of Regional Director for the North Region, which included oversight of Pac Sun locations in Michigan, New Hampshire, Maine, New York, Ohio, Wisconsin, Iowa, Nebraska, South Dakota, Oregon, Washington, and Alaska.

**A.**

In June of 2011, Defendant Pac Sun issued a revised version of its Associate Handbook and Policies and Procedures Manual ("2011 Employee Handbook") to existing employees and new-hires that contained a provision requiring arbitration of all disputes. *See* Debra Parent Dep., Mot. to Dismiss Ex. A ("Parent Dep."). The 2011 Employee Handbook was updated in 2012 through a supplement ("2012 Supplement"), but the arbitration agreement provision did not change. *Id.* After releasing the 2012 Supplement to its employees, Defendant's human resources department sent an email to the employees containing a voting poll that allowed employees to select an option stating "I Acknowledge Receipt of and agreement to the 2012 supplement: 2012 Associate Handbook and Policies and Procedures Manual Supplement." If the employee selected that option, then the selection generated a responsive email to Pac Sun's human

resources department stating that the employee had assented and agreed to the 2012 supplement. Plaintiff Hall chose the assent and agreement option on March 4, 2012. *See* Parent Dep Ex. 3.

Defendant Pac Sun began using an electronic Employee Self-Service ("ESS") system in May 2012. *See* Parent Dep. The ESS system allows employees to electronically access employment-related documents from their own computers, including paystubs and the Employee Handbook. *Id*. To access the system, an employee must enter his or her unique username and private password created by the employee. *Id*. Plaintiff Hall used the ESS system to review and acknowledge documents numerous times during her employment with Pac Sun. *See* Pl. Resp. to Mot. to Dismiss, Ex. 3.

In February of 2014 Defendant Pac Sun issued a new edition of the employee handbook which did not contain an arbitration provision. *Id*. Instead, Pac Sun released a stand-alone arbitration agreement entitled "Mutual Agreement to Arbitrate Claims" ("2014 Arbitration Agreement"). *See* Parent Dep., Ex. 4. The 2014 Arbitration Agreement provides, in relevant part:

> PACSUN and I mutually consent to the resolution by binding arbitration of all claims or controversies (collectively "claims"), whether or not arising out of my employment or the termination of employment, that PACSUN may have against me or that I may have against PACSUN…. The claims covered by this Agreement include, but are not limited to… claims for breach of any contract (express or implied)… [and] claims for wrongful termination or retaliation…. The parties intend that the claims to be arbitrated be construed as broadly as possible.

*Id*. The 2014 Arbitration Agreement states that it is the complete agreement of the parties on the subject of arbitration of disputes, and that it "supersedes any prior or contemporaneous oral or written understanding on the subject." *Id*. The agreement further provides that continued employment constitutes consideration for the agreement. *Id*. It also contains a signature block stating:

- 3 -

> By signing below, I acknowledge that I have carefully read this Agreement, and that I understand its terms. I further understand and agree, that I and PACSUN are waiving our right to have claims resolved by a court or a jury, and that all disputes between me and PACSUN must be resolved by binding arbitration as provided in this Agreement.

*Id*. The signature block contains a written signature by Craig, Gosslin, Senior Vice President of Human Resources and General Counsel, on behalf of Defendant Pac Sun. *Id*. The agreement does not contain a written signature from Plaintiff Hall.

Instead, Pac Sun created an event in the ESS system whereby employees could review and acknowledge the 2014 Arbitration Agreement online. Through the ESS system, Plaintiff Hall acknowledged the 2014 Arbitration Agreement on February 28, 2014. *See* Parent Dep. Ex 6; Resp. to Mot. to Dismiss, Exs. 2-3.

**B.**

During the course of Plaintiff Hall's employment, and at the time of her discharge, Brian Librach, Zone Vice President West, and Rebecca Reeder, Zone Vice President East, ran Pac Sun's field organizations. According to Hall, on or around February 4, 2015, she approached Mr. Librach with concerns regarding census changes, which involves the reduction of key holders and/or management at stores based on the store's annual sale volume. *Id*. at ¶ 18. Hall claimed that because Pac Sun had eliminated several management personnel in her region, there was a large amount of attrition and newly created vacancies, which was resulting in staffing shortages and coverage issues throughout her region. *Id*. at ¶ 19. Hall was concerned that such coverage issues were in violation of numerous state wage and hour laws, and in violation of company ethics and policies. *Id*. at ¶ 21. Mr. Librach allegedly responded that the eliminations had been approved by a senior director, and that Hall should focus on the issues that she could control within her region. *Id*. at ¶¶ 23-25.

Thereafter, on or around May 11, 2015, Hall received the resignation of a district manager from the New Hampshire/Maine region, which renewed Hall's concerns regarding violations of company policy. *Id*. at ¶ 27. The next day, May 12, 2015 Hall received her annual performance review, during which she renewed her complaints about violations of company policy and expressed concerns with the direction and culture of the company. *Id*. at ¶¶ 28-29. Hall complained again to Mr. Librach on May 21, 2015. *Id*. at ¶ 31-32. After again receiving a response that she found unsatisfactory, Hall decided to go over Mr. Librach's head. On June 11, 2015, she reported her concerns to Steve Fox, Senior Field Human Resources Manager. *Id*. at 33. Then again on July 28, 2015, Hall complained to Mr. Librach, who again did not respond in a way that was satisfactory to her. *Id*. at ¶ 37-38.

Events that took place on or around July 31, 2015 led to renewed complaints from Hall. At Pac Sun's direction, a district manager from a Ms. Reeder's region was assigned to mentor a new district manager that Hall had recently hired. *Id*. ¶ 39. Believing that the district manager assigned to mentor her new hire was an underperformer, Hall complained to human resources that the assignment was inappropriate and that it was sending the wrong message to the underperforming manager. *Id*. at ¶ 40.

On or around August 27, 2015, while in Minnesota, Hall discussed her concerns regarding the Minnesota district with Mr. Librach. Hall reiterated her concerns that, in the face of management reductions, employees were being overworked, forced to travel to multiple locations to assist in coverage, and unable to take legally mandated breaks. *Id*. at ¶¶ 41-43. Hall also expressed concern that the upcoming holiday season would add to the scheduling issues. *Id*. at ¶ 44. Hall renewed her complaints to Mr. Librach on August 31, 2015. *Id*. at ¶¶ 45-47.

On September 4, 2015, Hall again met with Mr. Fox, this time to express concerns that she would be terminated in retaliation for her complaints. *Id.* at ¶ 48. Hall's concerns were realized on September 8, 2015, when Mr. Librach called Hall to inform her that she was being terminated. *Id.* at ¶ 49. Mr. Librach told Hall that she was being terminated based on geography and Pac Sun's need to make cuts. *Id.* at ¶ 50.

In response to her termination, Hall filed the present action against Defendant Pac Sun on December 2, 2015. ECF No. 1. Hall alleges that her termination constitutes a breach of Defendant Pac Sun's code of ethics and a breach of an implied contract that Hall would have job security. She also alleges a count of promissory estoppel. Defendant Pac Sun now moves to dismiss Hall's complaint, alleging that her claims are covered by a binding arbitration agreement between the parties. ECF No. 12.

## II.

As noted by Defendant in its motion to dismiss, there is some confusion as to whether Rule 12(b)(6) – failure to state a claim upon which relief can be granted – or Rule 12(b)(1) –lack of subject-matter jurisdiction – is the proper vehicle to bring a motion to dismiss and compel arbitration. Courts have generally found that such motions should generally be brought under Rule 12(b)(6) "because the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction." *Liveware Publishing, Inc. v. Best Software,* Inc., 252 F.Supp.2d 74, 78 (D.Del.2003); *see also Johnson Associates Corp. v. HL Operating Corp.,* 680 F.3d 713, 718 (6th Cir. 2012). An arbitration agreement simply "requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate." *Liveware Publ'n,* 252 F.Supp.2d at 78–79.

Despite this, courts have allowed parties to receive the equivalent remedy upon making Rule 12(b)(1) motions. *See Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740 (W.D. Mich. 2008); *Nova CTI Caribbean v. Edwards*, No. CIV. A. 03–5319, 2004 WL 35759, at *2 (E.D.Pa. Jan. 8, 2004); *Thompson v. Nienaber*, 239 F.Supp.2d 478, 483 (D.N.J.2002). "The distinction between Rule 12(b)(1) and Rule 12(b)(6) is immaterial because based on either ground, the Arbitration Agreement requires arbitration of Plaintiff's claims…." *Moore*, 533 F.Supp at 744-45. Defendant raises both Rule 12(b)(1) and 12(b)(6) in moving to dismiss Plaintiff Hall's claims.

**A.**

The FAA was enacted in response to the hostility of American courts to enforcing arbitration agreements in an effort to place arbitration agreements upon the same footing as other contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 11 (2001). Section 2 of the FAA provides:

> A written provision in any… contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 218, (1985) (citing 9 U.S.C. §§ 3–4). An arbitor's power to hear claims does not arise from law governing jurisdiction, but from the contract of the parties.

The pertinent question, then, is whether there is a valid agreement between the parties and whether the specific dispute falls within the substantive scope of the agreement. *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366, 370 (6th Cir. 2014). "Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement

according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir.2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). "The federal policy favoring arbitration, however, is taken into account even in applying ordinary state law." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The party seeking to enforce a contract has the burden of showing that it exists. *See Kamalnath v. Mercy Mem'l Hosp. Corp*, 487 N.W.2d 499, 504 (Mich. App. 1992).

Once a party meets this burden, there is a presumption that an arbitration agreement is valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Plaintiffs may rebut the presumption of validity only by raising generally applicable state-law contract defenses such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). A party seeking invalidation of an arbitration agreement bears the burden of proving that the arbitration provision is invalid or does not encompass the claim at issue. *See Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000). As noted above, "an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit." *Johnson Associates*, 680 F.3d at 718.

The Sixth Circuit uses a four factor test to determine if a case should be dismissed and arbitration compelled: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended for those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

**B.**

In the present case only the first factor is at issue. Defendant Pac Sun argues that Hall agreed to arbitrate all grievances with her employer through an electronically signed 2014 Arbitration Agreement. Hall contends that because she only acknowledged the existence of an arbitration agreement, but did not sign the agreement or assent to arbitration, no agreement exists between the parties.

Under Michigan law, the creation of a contract requires both offer and acceptance. *See Pakideh v. Franklin Commercial Mortg. Grp.*, Inc., 540 N.W.2d 777, 781 (Mich. Ct. App. 1995). "[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766, 770 (Mich. App. 2006). Written employer policy statements can give rise to contractual obligations regardless of whether the policy is signed. *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880, 892 (Mich. 1980); *Carlson v. Hutzel Corp. of Mich.*, 455 N.W.2d 335, 339 (Mich. Ct. App. 1990). The absence of a signature is not fatal to the formation of a contract because an offeree can assent through conduct, such as continued employment after the effective date of the policy. *See Pakideh v. Franklin Commercial Mortg. Grp.*, Inc., 540 N.W.2d 777, 781 (Mich. Ct. App. 1995).

Through adoption of the Uniform Electronic Transactions Act ("UETA"), Michigan recognizes the legal effect of electronic signatures and electronic records in the formation of contracts. Under M.C.L. 450.832(h), an electronic signature means "an electronic sound, symbol, or *process* attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id*. (emphasis added). Under M.C.L. 450.832(g), an electronic record is "a record created, generated, sent, communicated, received, or stored by

electronic means." *Id*. "A record or signature shall not be denied effect or enforceability solely because it is in electronic form" and "[a] contract shall not be denied legal effect or enforceability solely because an electronic record was used in its formation." M.C.L. § 450.837. Furthermore:

> [a]n electronic record or electronic signature is attributable to a person if it is the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

M.C.L. § 450.839(1). The existence of an electronic record attributable to a certain person is "determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including any agreements of the parties, and otherwise provided by law." M.C.L. § 450.839(2).

Plaintiff Hall does not dispute that Defendant Pac Sun instituted a secure electronic process through which she was required to login and acknowledge the 2014 Mutual Arbitration Agreement. Nor does she dispute that she acknowledged the existence of the 2014 Arbitration Agreement. *See* Resp. to Mot. to Dismiss 12 ("the documents only show that Plaintiff acknowledged the Mutual Agreement."). Instead, Hall argues that there is no evidence that her acknowledgement of the 2014 Arbitration Agreement through Pac Sun's ESS system constituted an agreement to arbitrate. She argues that the online acknowledgement could merely have been an acknowledgement that she received or read a copy of the agreement, not that she agreed to be bound by its terms.

Hall's argument is not persuasive. The circumstances surrounding Hall's online acknowledgement suggest that she intended to acknowledge the existing agreement between the parties. *See* M.C.L. § 450.839(2). As noted above, the absence of Hall's actual signature is not fatal to the formation of the arbitration agreement because an offeree in Michigan "can assent

- 10 -

through conduct, such as continued employment after the effective date of the policy." *See Pakideh*, 540 N.W.2d at 781. Here, the 2014 Arbitration Agreement expressly provides that continued employment is consideration for the agreement. *See* Parent Dep., Ex. 4. By acknowledging the arbitration agreement through Pac Sun's secure online system, and then continuing her employment with Pac Sun, Plaintiff Hall assented to the terms of the arbitration agreement. For these reasons, a binding arbitration agreement exists between the parties.

### III.

Section 4 of the FAA provides that where a party involves the jurisdiction of a federal court over a matter that the court could adjudicate but for the presence of an arbitration clause, "[t]he court shall . . . direc[t] the parties to proceed to arbitration in accordance with the terms of the agreement" and the arbitration must take place "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. §4. Where all of a party's claims are subject to arbitration, courts may properly dismiss the complaint rather than stay proceedings. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000). Because all of Plaintiff Hall's claims are within the scope of the arbitration agreement, the complaint will be dismissed without prejudice.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 12, is **GRANTED**.

It is **FURTHUR ORDERED** that Plaintiff Hall's complaint, ECF No. 1, is **DISMISSED without prejudice** as to her rights to pursue her claims through arbitration pursuant to the terms of the parties' arbitration agreement.

    s/Thomas L. Ludington
    THOMAS L. LUDINGTON
    United States District Judge

Dated: April 6, 2016

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 6, 2016.

                               s/Michael A. Sian
                               MICHAEL A. SIAN, Case Manager